UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BONITA T.,

Plaintiff,

v. 3:25-CV-00700 (MAD/ML)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| OLINSKY LAW GROUP<br>*Attorney for Plaintiff*<br>250 South Clinton Street, Suite 210<br>Syracuse, New York 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>*Counsel for Defendant*<br>6401 Security Boulevard<br>Baltimore, Maryland 21235 | HUGH D. RAPPAPORT, ESQ. |

**MIROSLAV LOVRIC**, United States Magistrate Judge

**REPORT-RECOMMENDATION**

Plaintiff Bonita T. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) This matter was referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 4, 5.) This case has proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings. (Dkt. Nos. 13, 17, 18.) For the reasons set forth below, this Court recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I. PROCEDURAL HISTORY

On September 7, 2022, Plaintiff protectively filed an application for SSI, alleging disability dating from January 1, 2022. (Administrative Transcript ("T") 243-50.) Her application was denied initially on January 31, 2023, and on reconsideration on July 24, 2023. (T. 103-141.) On April 30, 2024, Plaintiff testified by telephone before Administrative Law Judge ("ALJ") Mary Jane Pelton, who also heard the testimony of vocational expert ("VE") Christine Ditrinco. (T. 44-77.) The ALJ issued an unfavorable decision on June 20, 2024. (T. 10-31.) The Appeals Council denied Plaintiff's request for review on April 28, 2025. (T. 1-6.)

Plaintiff timely commenced this proceeding on June 3, 2025, to challenge the denial of benefits. (Dkt. No. 1.)

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B. Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III. FACTS

As of the date of the ALJ's decision, Plaintiff was 50 years old. (T. 240.) At the time of her hearing, Plaintiff resided with one of her adult daughters and three of her grandchildren. (T. 52, 859, 1105.) Plaintiff attended regular education classes in high school but left upon completion of the tenth grade. (T. 52, 278, 768.) She subsequently obtained her GED. (T. 52, 859.)

From 2004 to 2014, Plaintiff was employed as an office manager at an optometrist's office. (T. 279.) She testified that she left this position partly due to the onset of seizures, but that the timing was also influenced by a disagreement with her employer and her husband's relocation for work. (T. 53, 859.)

Plaintiff reported a number of physical and mental health impairments. She has a history of epileptic seizures and has relied on a vagus nerve stimulator[2] to control them since approximately 2016. (T. 761, 997.) She reported inflammation, pain, and tingling in both hands, particularly the joints of the thumb and index finger of her dominant right hand and testified that these impairments made it difficult to reach, lift objects, write, and perform other fine manipulation. (T. 60, 677, 704, 1046.) She regularly wears a splint or hard brace on her right

[2] Operating on similar principles as a heart pacemaker, vagus nerve stimulation involves implanting a device in the neck that sends regular, mild pulses of electrical energy to the brainstem, and has been approved for use in certain cases of treatment resistant epilepsy. https://my.clevelandclinic.org/health/treatments/17598-vagus-nerve-stimulation [https://perma.cc/H2BW-ZUSS]

wrist but reported that it caused her pain. (T. 679, 683, 762, 765, 790.) She also wears a compression device on her left wrist. (T. 762.) Plaintiff's mental health treatment records included a 2021 hospitalization for depression symptoms and ongoing outpatient treatment for symptoms related to anxiety and post-traumatic stress disorder. (T. 859, 1110.)

The record includes Plaintiff's medical and mental health history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV. THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of September 7, 2022. (T. 12.) At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative joint disease/osteoarthritis, degenerative disc disease of the lumbar spine, epilepsy, Bell's palsy, depressive disorder, bipolar disorder, anxiety disorder, schizoaffective disorder, and post-traumatic stress disorder." *Id*.

At step three, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 1.18 (abnormality of a major joint in any extremity), Listing 11.02 (Epilepsy), Listing 12.03 (Schizophrenia spectrum and other psychotic disorders), Listing 12.04 (Depressive, bipolar and related disorders), Listing 12.06 (Anxiety and obsessive-compulsive disorders), and Listing 12.15 (Trauma- and stressor-related disorders). (T. 13-17.)

Next, the ALJ found that Plaintiff could perform less than the full range of light work. (T.

17-29.) The ALJ included specific limitations as part of the RFC determination:

> no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing as defined by the SCO, stooping, kneeling, crouching, and crawling; frequent handling and fingering with the right upper extremity; frequent reaching bilaterally; the claimant should avoid exposure to hazards such as unprotected heights and dangerous moving machinery; the claimant can understand, remember, and carry out simple instructions; the claimant can use judgment to make simple work-related decisions; the claimant should work in a job with occasional changes in the routine work setting; the claimant cannot perform work requiring a specific production rate or perform work that requires hourly quotas; and the claimant could have frequent interaction with supervisors and co-workers, but occasional interaction with the public.

(T. 17.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirement of 20 CFR 416.929" and Social Security Ruling ("SSR") 16-3p. *Id*. The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. 416.920c. *Id*. The ALJ also considered Plaintiff's subjective complaints regarding the intensity, persistence and limiting effect of her symptoms and found them "not substantiated by objective medical evidence . . . ." (T. 18.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 29.) Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 29-31.) Accordingly, the ALJ found that Plaintiff has not been under a disability since September 7, 2022, the date the application was filed. (T. 31.)

## V. <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ's evaluation of Plaintiff's testimony regarding her difficulties handling and reaching is not supported by substantial evidence. (Dkt. No. 13 at 9-12.)

Plaintiff also argues that the ALJ failed to properly evaluate the medical opinion evidence, in particular the opinions of Dr. Courtney Crocket, who performed two consultative physical examinations of Plaintiff, and Dr. Mark Schreck, an orthopedic hand surgeon who had treated Plaintiff since June 2023. (Dkt. No. 13 at 11-19.) The Commissioner contends that the ALJ's evaluation of the medical opinion and testimonial evidence, the related RFC determination, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 17 at 4-18.)

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

**2. Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."

[3] Plaintiff's application was protectively filed on September 7, 2022. (T. 243-250.) Thus, the new regulations apply in this case.

20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same,

the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Evaluation of Subjective Testimony

Assessment of a claimant's subjective complaints about his or her symptoms or the effect of those symptoms on the claimant's ability to work involves a two-step process. Where a claimant complains that certain symptoms, including pain, limit his or her capacity to work, the ALJ is required, first to determine whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Assuming the ALJ finds such an impairment, then the ALJ must take the second step of "evaluat[ing] the intensity and persistence of [the claimant's] symptoms, including pain," considering "all of the available evidence," to determine "how [the] symptoms limit [the claimant's] capacity to work." *Id*. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all of the available evidence, and must not "reject [ ] statements about the intensity and persistence of [ ] pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id*. §§ 404.1529(c)(2), 416.929(c)(2). Instead, where the claimant's contentions regarding his or her symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate those statements in relation to the other evidence, in order to determine the extent to which the claimant's symptoms affect his or her ability to do basic work activities. *Id*. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4).

While an ALJ "is required to take [a] claimant's report of pain and other limitation into account" in evaluating his or her statements, an ALJ is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). To the extent the ALJ determines that the claimant's statements are not supported by the medical

record, however, the ALJ's decision must include "specific reasons for the weight given to the individual's symptoms, to be consistent with and supported by the evidence," and the reasons must be "clearly articulated" for a subsequent reviewer to assess how the adjudicator evaluated the individual's symptoms. SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *8 (October 25, 2017).

The factors that an ALJ should consider in evaluating the claimant's subjective complaints, where they are not supported by objective medical evidence alone, are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received for relief of the symptoms; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(viii).

The ALJ must provide specific reasons for his assessment of Plaintiff's testimony, but the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment if there is substantial evidence supporting the determination. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)) (ALJ not required to discuss every factor at 20 C.F.R. § 404.1529(c)(3)(i)-(vii), so long as the ALJ includes specific reasons, which are supported by evidence in the case record, that permit the reviewing court to glean the ALJ's rationale); *Dezarea L.W. v. Bisignano*, No. 6:24-CV-825 (GTS/MJK), 2025 WL 2735687, at *8 (N.D.N.Y. July 29, 2025), *rep't and rec. adopted*, 2025 WL 2714862 (N.D.N.Y. Sept. 24, 2025) ("the failure to specifically reference a particular

relevant factor does not undermine the ALJ's assessment if there is substantial evidence supporting the determination.") "Remand is not required where the evidence of record allows the court to glean the rationale of an ALJ's decision." *Cichocki*, 534 F. App'x at 76 (cleaned up).

## VII. ANALYSIS

### A. Summary of Medical Health Opinion Evidence

The administrative record contains a number of medical and mental health opinions. Because Plaintiff's challenge focuses on the ALJ's evaluation of her physical impairments, this Court will summarize the relevant medical opinions in chronological order.

#### 1. Dr. Courtney Crocket[4]

Dr. Crocket first performed a consultative examination of Plaintiff on January 13, 2023. (T. 761-767.) Prior to the examination, Plaintiff provided her medical history, including the installation of a vagus nerve stimulator seven years earlier to address epileptic seizures, pain from a joint nodule that developed on her right hand and a torn tendon between the index finger and thumb on the same hand; and a history of Bell's palsy affecting the left side of her face. (T. 761-762.) Dr. Crocket observed that Plaintiff wore a glove on her left hand to address "unexplained swelling" and a hard brace on her right wrist. (T. 762.) The consultative examiner also noted that Plaintiff's vagus nerve simulator would "go off" every thirty seconds, causing Plaintiff "obvious pain and irritation." (T. 763.)

During the January examination, Dr. Crocket noted that Plaintiff had a normal gait, used no assistive devices, and could walk on her heels and toes without difficulty. (T. 763.) She needed no help changing for examination, getting on and off the examination table, or rising

[4] The ALJ occasionally spells the consultative examiner's surname "Crockett," but the consultative reports show that it is Crocket. (T. 766, 857.)

from a chair. (*Id.*) Dr. Crocket's report describes reduced flexion, extension, rotation, and lateral flexion of the cervical spine, and reduced flexion of the lumbar spine. (T. 764.) Straight leg tests for both legs were positive.[5] (*Id.*) She exhibited reduced (4/5) strength in her right upper extremity and right hand, but had full (5/5) strength in her left upper extremity and left hand. (T. 765.)

Based on this January examination, Dr. Crocket opined that Plaintiff should avoid unprotected heights, driving machinery, open flames, or submersion in water. (T. 766.) She further opined that Plaintiff had "marked limitations" for lifting, carrying, reaching, pushing, pulling, bending, squatting, or kneeling. (*Id.*)

Dr. Crocket performed a second consultative physical examination of Plaintiff on June 20, 2023. (T. 853-58.) Prior to the examination, Plaintiff reported that her worst pain was in the lower back, and she was scheduled to receive injections to ease the pain in July 2023. (T. 853.) She described the pain as 9/10, and aggravated by standing or walking for more than fifteen minutes. (*Id.*)

During the consultative examination, Dr. Crocket observed that Plaintiff had a normal gait and used no assistive device but declined to walk on heels and toes. (T. 855.) She did not require any assistance changing for the examination, getting on and off the examination table, or rising from a chair. (*Id.*) Plaintiff again had reduced flexion, extension, and rotary movement of the cervical spine and reduced flexion of the lumbar spine with minor pain. (T. 856.) Plaintiff declined a seated straight leg raise test due to muscle spasms in her legs, but had positive supine straight leg tests bilaterally with pain radiating to her buttocks. (*Id.*) Plaintiff showed a full range

---

5 Positive straight leg raise test results are typically indicative of a herniated disc in the back or compression of a nerve root. https://www.webmd.com/back-pain/what-is-straight-leg-raise-test [https://perma.cc/4RFG-B52G].

of motion in her elbows and wrists, while exhibiting pain in the right wrist and tenderness in the fingers of her right hand. (*Id.*) Unlike the January 2023 examination, she exhibited full strength in the right upper extremity but reduced strength in the left. (*Id.*) She still exhibited reduced grip strength in the right hand, "consistent with her tenderness to palpation in first and second joints" of that hand. (T. 857.) Dr. Crocket observed an intact ability to use the fingers to zip, button, and tie. (*Id.*)

Based on this June 2023 examination, Dr. Crocket opined that Plaintiff should avoid unprotected heights, driving machinery, "activities where others could be injured," open flame, or submersion in water. (*Id.*) She further opined that Plaintiff had numerous "marked limitations": "lifting, carrying, bending, squatting, standing, walking, or sitting" as well as "reaching, pushing, pulling, lifting, and carrying." (*Id.*)

The ALJ found Dr. Crocket's opinions to be "unpersuasive." (T. 26.) Citing generally to both opinions, the ALJ acknowledged that "Dr. Crocket's reports including adverse findings that might support some of the limitations she placed on the claimant." (T. 26.) However, the ALJ deemed the marked limitations opined by the consultative examiner to be "inconsistent with, and not duplicated in, physical exams of [Plaintiff] that were performed by her treating orthopedic spinal surgeon . . . around the same times that [Plaintiff] was examined by Dr. Crocket." (T. 27.) In particular, the ALJ cited treatment notes from January 2023, May 2023, and September 2023 describing Plaintiff as having no difficulty ambulating and showing no decrease in the range of motion in her spine, a negative straight leg raise, intact reflexes, 5/5 motor strength throughout her upper extremities bilaterally, an intact range of motion in her bilateral hips, knees, and ankles, and 5/5 motor strength throughout her lower extremities bilaterally. (T. 27, 753-755, 968-976.) The ALJ also found Dr. Crocket's opinions inconsistent with those of Dr. Putcha and Dr.

Gallagher, who each had the opportunity to review the broader medical record, as discussed below. (*Id.*)

**2. Dr. S. Putcha**

On January 31, 2023, Dr. Putcha, a state agency medical consultant, reviewed Plaintiff's then-current medical records and offered an opinion regarding her physical functional limitations. (T. 111-19.) Dr. Putcha opined that Plaintiff can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. (T. 116.) In the consultant's opinion, Plaintiff can stand and/or walk with normal breaks for a total of six hours in an eight-hour workday and can sit for the same total length of time. *Id.* Dr. Putcha further opined that Plaintiff can occasionally: climb ramps, stairs, ladders, ropes, and scaffolds; and balance, stoop, kneel, crouch, and crawl. (T. 116-17.) Dr. Putcha found no evidence of manipulative limitations. (T. 117.)

The ALJ found Dr. Putcha's opinion to have "some persuasive value," because the opinion "is supported by his program knowledge and expertise, his review of the available evidence of record, and the detailed explanation he furnished for his opinion" and "somewhat consistent with the evidence of record that was available to him." (T. 26.)

The ALJ rejected three specific findings from Dr. Putcha: that Plaintiff can occasionally climb ladders, ropes, and scaffolds; had no manipulative limitations; and should avoid moderate exposure to hazards such as machinery and heights. (*Id.*) Without citing specific records, the ALJ explained that these portions of Dr. Putcha's opinion are "not entirely consistent with the evidence received at the hearing level, which supports further restricting the claimant to never climbing ladders/ropes/scaffolds, frequent handling and fingering with the right upper extremity, frequent reaching bilaterally, and avoiding exposure to hazards such as unprotected heights or

dangerous moving machinery." (*Id.*)

**3. Dr. K. Gallagher**

On July 17, 2023, Dr. Gallagher, state agency medical consultant, reviewed Plaintiff's updated medical records in connection with her request for administrative reconsideration. (T. 135-37.) Dr. Gallagher largely affirmed Dr. Putcha's opinion. For example, Dr. Gallagher opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand/walk or sit for a total of about six hours over the course of an eight-hour workday, and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (T. 135-136.) Dr. Gallagher opined that Plaintiff had no limitations for reaching in all directions but found that Plaintiff was limited to frequent fingering with the right hand. (T. 136.)

The ALJ deemed Dr. Gallagher's opinion to have the "most persuasive value," due to the non-examining consultant's "program knowledge and expertise, his review of the available evidence of record, and the detailed explanation he furnished for his opinion" as well as its generally consistency with the "evidence of record that was available to him." (T. 26.) However, the ALJ rejected certain portions of Dr. Gallagher's opinion: that plaintiff could occasionally climb ladders/ropes/scaffolds; had no limitation in her ability to handle with the right upper extremity; had no limitation in her ability to reach bilaterally; and should avoid concentrated exposure to hazards such as machinery and heights. (*Id.*) Instead, the ALJ's RFC determination restricts Plaintiff to "never climbing ladders/ropes/scaffolds, frequent handling and fingering with the right upper extremity, frequent reaching bilaterally, and avoiding [any] exposure to hazards such as unprotected heights or dangerous moving machinery." (T. 26.)

**4. Dr. Mark Schreck**

On April 1, 2024, Dr. Schreck completed a medical opinion form regarding Plaintiff's

physical ability to do work-related activities. (T. 1128-29.) The record shows Dr. Schreck's direct treatment relationship dating back to June 2023, although Plaintiff had been a patient with other members of his practice for a longer period. (T. 886-892, 1129.) Utilizing a checkbox form, Dr. Schreck opined that Plaintiff could carry less than ten pounds on a frequent basis, and could stand, walk, and sit with normal breaks for about three hours in an eight-hour workday. (T. 1128.) Dr. Schreck further opined Plaintiff could sit for up to an hour before changing positions and was limited to standing up to twenty minutes before needing to change positions. (*Id.*)

In Dr. Schreck's opinion, Plaintiff was capable of occasionally twisting, stooping, crouching, and climbing stairs and ladders, a limitation that he related back to Plaintiff's chronic back pain. (T. 1129.) Dr. Schreck also opined Plaintiff required a job that allowed her to shift at will from sitting or standing/walking, and to lay down four to six times daily at unpredictable intervals during the workday. (*Id.*) Without providing specifics, Dr. Schreck found that Plaintiff was limited in her ability to reach, finger, push, pull, handle, and feel. (*Id.*) Dr. Schreck attributed these additional limitations to Plaintiff's chronic hand pain and weakness. (*Id.*)

The ALJ found the opinion of Plaintiff's treating orthopedic hand surgeon to be "unpersuasive." (T. 27.) The ALJ found the opinion unsupported by Dr. Schreck's own treatment notes and beyond the scope of the physician's specialization and treatment relationship with Plaintiff. The ALJ also faulted Dr. Schreck's opinion of Plaintiff's manipulative limitations because it failed to provide a function-by-function assessment and was inconsistent with the opinions of non-examining consultants Dr. Putcha and Dr. Gallagher.

**B. The ALJ Failed to Adequately Explain Her Evaluation of Plaintiff's Ability to Reach and Use Her Hands.**

At her April 30, 2024 hearing, Plaintiff testified regarding her ongoing treatment of pain,

tingling, and numbness in both hands, including her use of a brace on her right hand for much of the day. (T. 60.) Plaintiff explained that the combination of the pain and the awkwardness of the brace on her dominant hand made it difficult to perform many tasks with her hands. (T. 55, 60-61.) This testimony is bolstered by the broader record, including treatment notes reflecting regular swelling and tenderness and decreased strength, and imaging reports showing partial tearing of a ligament in the right hand. (T. 677, 681, 688, 692, 700, 703, 706, 830, 834-835, 1085, 1087.)

In addition to the testimonial and objective evidence, the record contains a range of medical opinions addressing Plaintiff's use of her hands. Dr. Putcha, who reviewed Plaintiff's medical records including Dr. Crocket's first consultative examination, opined that Plaintiff had no manipulative limitations. (T. 117.) Dr. Gallagher, who had access to updated records, offered a more restrictive opinion by limiting Plaintiff to "frequent fine fingering of the right hand." (T. 136.) Dr. Schreck, a specialist in the area, offered a more restrictive but vague opinion that Plaintiff had limitations in both fingering and handling. (T. 1129.) Explaining that these opinions were "not entirely consistent with the evidence received at the hearing level," the ALJ found Plaintiff capable of performing "frequent fingering and handling."

While the ALJ's rejection of Dr. Putcha's opinion is obvious, the distinction between Dr. Gallagher's opinion, Dr. Schreck's opinion, and the ALJ's RFC determination is more subtle, but sizable. As Magistrate Judge Dancks explained in *Tanya W. v. Comm'r of Soc. Sec*. No. 3:20-CV-510 (TWD), 2021 WL 4942092, at *8 (N.D.N.Y. Oct. 22, 2021):

> "Handling" involves "[s]eizing, holding, grasping, turning or otherwise working with hand or hands." *Olmeda v. Barnhart*, No. 04 Civ. 5456, 2006 WL 2255003, at *5, n.11 (S.D.N.Y. Aug. 1, 2006) (citation omitted). With regard to "handling," "[f]ingers are involved only to the extent that they are an extension of the hand, such as to turn a switch...." *Id*. "Fingering" means "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or

> arm as in handling." *Id*. "Frequent" is defined under the regulations as occurring from one-third to two-thirds of the time, while "occasional" refers to activity occurring up to one-third of the time. SSR 83-10; *Castle v. Comm'r of Soc. Sec*., No. 1:13-CV-543 (GLS), 2014 WL 2215759, at *2, n.6 (N.D.N.Y. May 29, 2014).

In short, Dr. Gallagher opined only that Plaintiff can perform picking, pinching, and similar fine manipulation up to two thirds of the workday, while Dr. Schreck opined that Plaintiff has undefined limitations in both fine manipulation of the fingers and gross manipulation of the hands such as seizing, holding, grasping, and turning. Thus, the ALJ's RFC determination, that Plaintiff can perform fine *and* gross manipulation up to two-thirds of the workday does not correspond to any of the medical opinion evidence. By itself, this is not error. It is well-established that an ALJ's RFC determination is not required to mirror any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

However, it is equally true that ALJs must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)). Put another way, an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Here, the ALJ offered no such explanation for her evaluation of Plaintiff's ability to use her hands, citing only "evidence received at the hearing level." Courts have frequently remanded

where the ALJ failed to "connect the dots" between the record evidence and the hand limitations in the RFC. *See Jolee O. v. O'Malley*, No. 5:23-CV-048 (LEK), 2024 WL 688729, at *4 (N.D.N.Y. Feb. 20, 2024) ("Since the ALJ did not cite to specific evidence from the administrative record supporting her determination of Plaintiff's manipulative limitations, the Court cannot effectively review whether that determination was supported by substantial evidence."); *Carlin v. Comm'r of Soc. Sec.*, No. 19-CV-6312-LJV, 2020 WL 5995181, at *3 (W.D.N.Y. Oct. 9, 2020) (remanding where the ALJ failed to explain how plaintiff could perform work involving "frequent handling and fingering despite having mild to moderate difficulties ... using the hands") (quotation marks omitted); *see also Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true.").

A similar error affects the ALJ's assessment of Plaintiff's reaching ability. Plaintiff testified generally about arm weakness and pain that made it difficult to reach or lift. (T. 60.) Dr. Putcha and Dr. Gallagher opined that Plaintiff had no limitations in her ability to reach with either arm, in any direction. (T. 117, 136.) Dr. Schreck opined that Plaintiff had some limitations in reaching but provided no functional details. (T. 1129.) Dr. Crocket offered the most restrictive assessment, twice opining that Plaintiff had "marked limitations" in reaching. (T. 766, 857.)

The ALJ found that Plaintiff could perform "frequent reaching bilaterally," a conclusion that does not correspond to any of the medical opinion evidence, Plaintiff's testimony, or the broader record. (T. 17.) Again, the only basis offered by the ALJ is "evidence received at the hearing level." Thus again, the ALJ has failed to build an accurate and logical bridge for this

Court to discern her reasoning. *Olga M. v. Comm'r of Soc. Sec.*, No. 1:22-CV-03217-GRJ, 2023 WL 4558509, at *6 (S.D.N.Y. July 17, 2023) (remanding where ALJ failed to explain basis for RFC allowing frequent reaching); *April S. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06837 (JJM), 2022 WL 4480172, at *4 (W.D.N.Y. Sept. 27, 2022) (remanding where ALJ failed to explain analysis of overhead reaching limitation); *Kimberly M. v. Comm'r of Soc. Sec.*, No. 19-CV-1546-LJV, 2020 WL 6947346, at *3 (W.D.N.Y. Nov. 25, 2020) (remanding where it was unclear how ALJ reached conclusion that Plaintiff could perform frequent reaching).

The ALJ's errors in her analysis of Plaintiff's ability to use her hands and to reach cannot be considered harmless. At the April 30, 2024 hearing, VE Ditrinco testified that an additional limitation to occasional fingering and handling with the right hand would rule out all light and sedentary jobs. (T. 73-74.) Similarly, a change in the reaching restriction may erode the types of jobs Plaintiff could perform. *Kimberly M.*, 2020 WL 6947346, at *3 (recognizing that many light and sedentary jobs require frequent reaching).

Therefore, this Court recommends remand to allow the ALJ to explain the basis for the handling and reaching limitations in the RFC, and for further development of the record as necessary. *See Portland G. v. Comm'r of Soc. Sec.,* No. 1:20-CV-01035 (EAW), 2023 WL 1097459, at *7 (W.D.N.Y. Jan. 30, 2023) ("Because the ALJ's analysis lacks the logical connection between the evidence regarding Plaintiff's inability to properly use her right shoulder and right hand, and her ability to perform light work, the Court is unable to discern how the ALJ arrived at the conclusion that Plaintiff was able to occasionally reach in all directions with her right arm, occasionally handle objects/finger with her right hand, and perform the lifting, carrying, pushing, and pulling requirements of light work."); *Buczynski v. Comm'r of Soc. Sec.*, No. 1:17-CV-01126 (MAT), 2019 WL 5540880, at *4 (W.D.N.Y. Oct. 28, 2019) (". . . the

written determination does not include any explanation as to how limiting Plaintiff to occasionally using his right arm/hand is consistent with Dr. Balderman's opinion that Plaintiff had marked limitations for performing those same activities. Without this additional information, the Court is unable to discern how the ALJ arrived at his conclusion that the RFC is supported by Dr. Balderman's opinion, and therefore whether the RFC is supported by substantial evidence.").

### C. Plaintiff's Other Challenges to the ALJ's Evaluation of the Medical Opinion Evidence Do Not Present Independent Grounds for Remand.

If the District Court adopts this Court's recommendation that the ALJ's assessment of Plaintiff's ability to reach and use her hands is not supported by substantial evidence, it follows that the ALJ would need to revisit her overall analysis of the medical opinions on remand. However, if the District Court finds the ALJ marshaled substantial evidence to support a limitation to frequent reaching, handling, and fingering, this Court does not recommend remand based on Plaintiff's other challenges to the ALJ's evaluation of the medical opinion evidence.

Other than the errors in reaching and use of the hands outlined above, the ALJ provided an adequate evaluation of the supportability and consistency of the medical opinion evidence. For example, the ALJ evaluated the persuasiveness of Dr. Crocket's opinion in light of her examination results, treatment notes from Plaintiff's orthopedic specialist, and the other opinion evidence. Similarly, the ALJ discounted Dr. Schreck's opinions on Plaintiff's physical impairments such as back pain and time off task that fell outside his specialization and treatment relationship with Plaintiff. Although the ALJ's analysis tended to favor the opinions of non-examining state agency consultants, such reliance, on its own, is not grounds for remand. It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may

override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." *Maleski v. Comm'r of Soc. Sec.*, No. 1:18-CV-1378 (WBC), 2020 WL 210064, at *4 (W.D.N.Y. Jan. 14, 2020).

Therefore, aside from the reaching, handling, and fingering limitations of the RFC, the ALJ's adequate evaluation of the medical opinion evidence is demonstrated by the text of her disability determination or can be readily gleaned from her discussion of the longitudinal record.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED;** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 5, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge